# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA STELZER,<br><br>         Plaintiff,<br> vs.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, A Limited Liability Company; and Does 1 through 75, inclusive,<br><br>         Defendant. | CASE NO. 13-CV-1788-LAB-JMA<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND** |

   Stelzer filed this case in San Diego Superior Court on June 20, 2013, and CarMax removed it on August 1 and promptly filed a motion to dismiss. Then, with the motion fully briefed and under submission, CarMax filed a motion to remand. That motion challenges the Court's subject matter jurisdiction, which the parties can't waive and which the Court has a continuing obligation to monitor. Indeed, "[i]f at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). For the reasons given below, the motion to remand is **DENIED**.

## I. CarMax's Removal

   CarMax removed this case on the basis of diversity jurisdiction, which requires complete diversity of citizenship and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a). There's no dispute that Stelzer is a citizen of California, but CarMax

asserted that it is a citizen of Virginia, organized under its law and with its principal place of business there. As for the amount in controversy, CarMax acknowledged that Stelzer is seeking only $40,000 in actual damages and $32,000 in punitive damages, but asserted that the cost of attorney's fees and injunctive relief would take the amount well above the $75,000 threshold.

## II.     Legal Standard

A defendant can remove any action filed in state court over which federal courts have original jurisdiction. 28 U.S.C. 1441(a). That said, the removal statute is strictly construed against removal, and "[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* The propriety of removal turns on whether the case could have originally been filed in federal court, *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997), and the Court's analysis must focus on the pleadings "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002). *See also Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

## III.    Discussion

Stelzer now contests both elements of diversity jurisdiction. She argues, first, that CarMax is, like her, a citizen of California. She argues, second, that some amount less than $75,000 is in controversy. The Court will discuss those arguments individually.

### A.     Diversity

For diversity jurisdiction to exist in this case, Stelzer and CarMax must be citizens of different states. There's no dispute that Stelzer is a citizen of California. But as she sees it, CarMax is too. Indeed, this case is about a Mercedes that Stelzer bought from a CarMax location in Kearney Mesa, CA. CarMax, on the other hand, insists that it's a citizen of Virginia, organized under Virginia's law and with its principal place of business there.

//

1    CarMax is a limited liability company, which is treated as a partnership for purposes
2 of diversity jurisdiction. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th
3 Cir. 2006). Thus, "an LLC is a citizen of every state of which its owners/members are
4 citizens." *Id.* If that owner or member is a corporation, it is a citizen where it is incorporated
5 and where it has its principal place of business, or where "its high level officers direct,
6 control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80
7 (2010); 28 U.S.C. § 1332(c)(1). If it is an individual, he or she is a citizen of the state where
8 he or she is domiciled, which is where he or she has established a fixed habitation and
9 intends to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

10    When it removed this case (and now), CarMax asserted that its sole member is
11 CarMax Auto Superstores West Coast, Inc., a corporation incorporated under the laws of
12 Virginia with its principal place of business there. (Notice of Removal ¶ 3(c); Opp'n Br. at 5.)
13 But the story is a little more complicated than that. CarMax used to be a California LLC, but
14 claims it "converted out and became a Virginia company" sometime during July 2012.
15 (Opp'n Br. at 5.) Also, CarMax Auto Superstores West Coast, Inc. used to be a California
16 corporation "before it merged out and became a Virginia corporation." (Opp'n Br. at 5.) The
17 evidentiary record is a little hard to piece together, but it's clear enough that this corporate
18 restructuring took place in early July 2012, no doubt well before this case was filed. Both
19 CarMax and CarMax Auto Superstores West Coast have identified a California main office
20 in Buena Park, but it is just that: a main office in California that CarMax keeps for the
21 purposes of conducting business in the state. As an in-house lawyer for CarMax puts it,
22 "[t]he Buena Park location is an actual CarMax retail store that performs no executive or
23 management functions for the company; it was designated for purposes of the various
24 California statutes that require or allow a foreign company to designate a main office." (Bloor
25 Decl. ¶ 19.) Its nerve center, by contrast, "where its high level officers and executives direct
26 and control CarMax's activities," is in Richmond, Virginia. (*Id.*)

27    Stelzer disputes that Carmax's principal place of business is in Virginia because,
28 among other reasons, in an earlier case it said its principal place of business was in Orange

County, California. That case was *Brooks v. Carmax Auto Superstore California, LLC*, filed in San Diego Superior Court on May 10, 2012, and CarMax's admission came in a responses to form interrogatories dated August 31, 2012. CarMax was asked to state the address of its principal place of business and it responded, "12800 Tuckahoe Creek Parkway, Richmond, VA 23238. As of July 1, 2012, CarMax Auto Superstores California, LLC's principal place of business is in Orange County, California." (Rosner Decl., Ex. 1 at 4.) Stelzer also notes that CarMax's website lists sixteen dealerships in California as of August 23, 2013, the implication being that it's hard to believe sixteen California dealerships (and others in other western states) are run out of Richmond, Virginia.

      CarMax first tries to get around the *Brooks* interrogatory response by pointing out that the case pre-dated its corporate restructuring that moved its operations to Virginia. This isn't entirely convincing, because the response is dated August 31, 2012 and the restructuring took place in early July of that year. Indeed, CarMax asserts in its opposition brief now that it hasn't "represented itself as a California entity in any legal proceeding or other context since the July 2012 transition," which is untrue considering that the interrogatory response, dated August 31, says CarMax's principal place of business is in Orange County, California.

      CarMax's second explanation for the interrogatory response is more satisfying. In short, it's that: (1) the response wasn't drafted by the most knowledgeable lawyers; (2) it gave only the address of the Virginia nerve center and gave it first; and (3) it mentioned a principal place of business in Orange County, CA as a superfluous point for venue purposes. Finally, in a supplemental pleading it corrected its response, by saying "To clarify the prior response, CarMax Auto Superstores California, LLC's principal place of business is 12800 Tuckahoe Creek Parkway, Richmond, VA 23238. As of July 1, 2012, CarMax Auto Superstore California, LLC's main office in California is designated as in Orange County, CA." (Ex. 14.) This was on January 14, 2013, well before this case was filed. All of this raises the straightforward question whether the Court should be guided by CarMax's formal corporate documents and the representations of its in-house lawyer, or a response to an interrogatory in an earlier, unrelated case that was subsequently clarified.

The Supreme Court in *Hertz* did reject the idea that a mere form identifying a corporation's "principal executive office" was sufficient to establish its nerve center, and Stelzer seizes on that here to suggest that CarMax hasn't done enough to show that its principal place of business is truly in Virginia. *Hertz*, 559 U.S. 77, 97. *See also L'Garde, Inc. v. Raytheon Space and Airborne Systems*, 805 F.Supp.2d 932, 940 (C.D. Cal. 2011) ("California district courts have found that reliance on a single piece of evidence, such as a Secretary of State printout, is insufficient for a party to prove the location of its headquarters under the nerve center test."). But CarMax does more than just hold up a single document. First, it holds up several, from both California and Virginia sources, establishing that it is incorporated in Virginia. It also identifies a physical address for its nerve center, which the court in *L'Garde* found meaningful. Finally, it provides the declaration of an in-house lawyer—an associate general counsel based in Richmond—who claims that "[t]he executive functions of both defendant CarMax Auto Superstores California, LLC, and CarMax Auto Superstores West Coast, Inc., are located in Richmond, Virginia." (Bloor Decl. ¶ 19.) On the basis of that, the Court is satisfied that CarMax isn't manipulating the system and claiming a nerve center where "there is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat.." *Hertz*, 559 U.S. at 97. Stelzer's only rebuttal to this is that CarMax said something different in an interrogatory in August 2012—the same interrogatory in which the only address it gave for a principal place of business was in Richmond, Virginia.

The Court finds, for the above reasons, that CarMax is a citizen of Virginia for the purposes of diversity jurisdiction. This is a little counterintuitive, to be sure. It operates a number of car dealerships in California, and its official name is CarMax Auto Superstores California, LLC. The evidence, nonetheless, is that CarMax is a Virginia citizen. The Supreme Court in *Hertz* acknowledged that anomalies would arise where a company has a visible presence in one state but a nerve center elsewhere, and simply said that "[a]ccepting occasionally counterintuitive results is the price the legal system must pay to avoid overly complex jurisdictional administration while producing the benefits that accompany a more

uniform legal system." *Id.* at 96.  If diversity jurisdiction doesn't exist in this case, therefore, it is because the amount in controversy isn't satisfied.

### B.     Amount in Controversy

Stelzer's complaint seeks "$40,000 in actual damages, and $32,000 in punitive damages."[1]  That's an apparent total of $72,000, $3,000 shy of the jurisdictional minimum.  And according to Stelzer, that's enough to keep this case out of federal court, considering that "a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court."  *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007).  There is a good faith requirement, but subject to that a plaintiff has the "prerogative . . . to forgo a potentially larger recovery to remain in state court."  *Id.  Lowdermilk* dealt with removal under the Class Action Fairness Act, and the Ninth Circuit has held that it has been "effectively overruled" by the Supreme Court's opinion in *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013).  *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).  This basic principle still stands, however, and is applicable in this case.

If Stelzer actually stipulated to some amount in controversy less than $75,000, that may simplify matters here.  *See Standard Fire*, 133 S.Ct. at 1350.  She hasn't done that, though, and seems unwilling to.  Instead, she asks CarMax to stipulate to an award of more than $75,000 should she prevail on the merits.  (Opp'n Br. at 2.)  That is, in essence, an attempt to run around the Court's independent obligation to consider whether federal jurisdiction exists, and CarMax doesn't seem inclined to take Stelzer up on it in the first place.  *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 342 (9th Cir. 1996).  Anyway, ample caselaw makes very clear that any stipulation to limit recovery must come before a case is removed; it can't be offered after the fact to send a case back to state court.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces

---

[1] This is most likely a small error on Stelzer's part, as her remand brief makes clear that the $32,000 amount is for actual damages and the $40,000 amount for punitives.  (Br. at 5.)

- 6 -

the claim below the requisite amount, this does not deprive the district court of jurisdiction."); *Guglielmino v. Mckee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007); *Gillette v. Peerless Ins. Co.*, 2013 WL 3983872 at *2–3 (C.D. Cal. July 31, 2013).

Considering that no stipulation resolves the amount in controversy in this case, the question then becomes what that amount is for diversity jurisdiction purposes. The Court has already noted that, as the removing party, CarMax has the burden of showing that the amount is greater than $75,000. But there's a follow-on question that's just as important, which is what CarMax's burden of proof is. When a complaint filed in state court affirmatively alleges that the amount in controversy is less than the jurisdictional threshold of $75,000, the party seeking removal must prove to a "legal certainty" that the threshold is met. *Tele Munchen Fernseh GMBH & Co. v. Alliance Atlantis Int'l Distrib, LLC*, 2013 WL 6055328 at *2 (C.D. Cal. Nov. 15, 2013) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)). But, when it's unclear or ambiguous from the face of a complaint whether the jurisdictional threshold is met, a "preponderance of the evidence" standard applies. *Id.*; *see also Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).[2]

The Court is actually conflicted as to which burden of proof applies in this case. On the one hand, Stelzer seeks exactly $72,000 in her statement of damages, which would seem to support requiring CarMax to show to a legal certainty that more than $75,000 is in controversy. On the other hand, Stelzer's complaint requests other relief that isn't valued at all, for example injunctive relief and attorney's fees, each of which must be factored into the amount in controversy. *See In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2001) ("In other words, where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for

---

[2] The Court is fairly confident that these are the appropriate standards, and that the Ninth Circuit's rejection of a "legal certainty" standard in *Rodriguez* is peculiar to the class action context and the particular instance in which a plaintiff attempts to stipulate to an amount in controversy less than the jurisdictional threshold. In any event, CarMax doesn't argue for the lesser "preponderance of the evidence" standard and instead argues that it's a legal certainty that the amount in controversy is greater than $75,000 in this case. (Opp'n Br. at 16–17.)

jurisdiction.")[3]; *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract."). Given that Stelzer doesn't value the injunctive relief and attorney's fees, it may be that her complaint is technically ambiguous as to the *total* amount in controversy, in which case the lower burden of proof is appropriate. *See Guglielmino*, 506 F.3d at 701 ("Thus, because the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific total amount in controversy."). On the other hand, CarMax doesn't make that argument. Its opposition brief, in more than one place, argues that it's a legal certainty that the amount in controversy is greater than $75,000; it seems to be willing to concede that it must satisfy this higher burden of proof. (*See* Opp'n Br. at 16–17, 21.) The Court will revisit this issue below.

CarMax argues that the amount in controversy exceeds $75,000 for two reasons: the injunctive relief sought, which it values at $350,000, and the potential attorney's fees, which it values at $77,400. These amounts can't be based upon speculation and conjecture. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003). Rather, the Court can consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," including declarations and affidavits. *Id.* at 1090.

Before addressing attorney's fees and injunctive relief, there is an ambiguity in the briefing that needs to be addressed. Stelzer's statement of damages seeks $72,000 "[i]n

---

[3] The Court recognizes that one reading of this language in *In re Ford Motor* is that *either* the plaintiff's award *or* the defendant's cost is the amount in controversy, but not the aggregation of them. Indeed, the opinion says that under this so-called "either viewpoint" rule, "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *Id.* But, Stelzer doesn't seem to contest the incorporation of injunctive relief into the total amount in controversy, and other district courts have read *In re Ford Motor* as allowing for just that. *See, e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002) ("Plaintiff seeks an injunction commanding reinstatement to his former position. The amount in controversy may include the cost of complying with such an injunction."). The issue may well be more complex than the Court is assuming, but for her part Stelzer doesn't contest at all that the cost of injunctive relief should be factored into the amount in controversy in this case.

addition to her demand for rescission of the purchase contract and for attorney's fees and costs." (Doc. No. 1-2.) That gives the impression that Stelzer's rescission demand, presumably for the purchase price of the car, is distinct from her claim for actual damages. But that's hard to believe. First, the actual damages she seeks are $32,000, and the purchase price of the car was $31,998; that suggests that she really intends to use rescission and actual damages interchangeably. Second, there are no facts alleged to give rise to the inference that, wholly apart from buying a car of diminished value that she otherwise wouldn't have bought, Stelzer was injured to the tune of $32,000 in this case. It's also worth pointing out that CarMax's own calculation of the damages doesn't include rescission apart from actual damages. It considers just rescission, punitive damages, injunctive relief, and attorney's fees. (Opp'n Br. at 17–21.) The Court clearly has to factor rescission into the amount in controversy here, which is the full value of the sale. *See Harnden v. Jayco,* 496 F.3d 579, 582 (6th Cir. 2007). But it will assume, contrary to Stelzer's statement of damages, that this rescission amount *is* the actual damages that she seeks. Otherwise, Stelzer couldn't even plausibly argue that this case is worth less than $75,000. Rescission of a $31,998 sale, actual damages of $32,000, and punitive damages of $40,000 clearly surpass the $75,000 threshold.

With respect to the attorney's fees, it is unsettled in the Ninth Circuit whether fees incurred *after the date of removal* are included in the amount in controversy. *Curtean-Garland v. WinCo Holdings, Inc.*, 2013 WL 3479563 at *2 (D. Or. July 8, 2013). The Court is inclined to take the position that they're not. *See Wastier v. Schwan's Consumer Brands*, 2007 WL 4277552 at *3 (S.D. Cal. Dec. 5, 2007). This makes CarMax's estimate of $77,400 wildly excessive. (Edwards Decl. at 18.) In fact, CarMax's own expert estimates that the "Case Intake and Claim Generation Phase" of this case, which would cover everything up through removal, is worth $1,200 in attorney's fees. (Edwards Decl. at 11.) Even assuming the Court credits that estimate it takes the $72,000 Stelzer seeks just $73,200, still shy of the jurisdictional minimum. In fact, the Court doesn't credit that estimate. According to CarMax's expert, this early phase of litigation "includes an initial meeting with the client,

review of documents, and generation of a complaint and a CLRA/Song-Beverly Act demand letter," which he estimates as consuming four to seven hours of junior attorney work. With minimal digging, the Court has found a complaint that's more or less identical to the complaint Stelzer filed in this case. *See Lee v. CarMax*, 13-CV-7648-MWF-VBK (C.D. Cal. 2013). That suggests that Stelzer's counsel uses a form complaint for cases of this kind, which makes complete sense given that they allege a technical violation of California's Vehicle Code based upon a universal practice of CarMax: CarMax called a car "Certified" but didn't provide a completed inspection report. With that in mind, it's hard to believe that it took a junior associate 4-7 hours to meet with Stelzer and draft a complaint and demand letter. The Court would expect this to take anywhere from perhaps 1–3 hours, or half of what CarMax suggests, bringing the total amount in controversy to $72,600.

That brings the analysis to the cost of injunctive relief. The Court agrees with Stelzer that CarMax's cost estimate of $350,000 borders on the preposterous, but CarMax needs only to account for $2,401. And *Stelzer's own estimate* is that injunctive relief will cost CarMax more than that, anywhere from $3,500 to $7,000.[4] (Reply Br. at 5.) The Court finds that, under either a preponderance of the evidence *or* legal certainty standard, CarMax has shown that the injunctive relief Stelzer seeks can be valued at more than $2,401, which takes the amount in controversy in this case above the $75,000 threshold. The Court therefore finds that it has subject matter jurisdiction. Stelzer was free when she filed this case, as the Court acknowledged, to seek an amount that would keep the case in state court, but the simple fact is that she played her complaint to close to the amount-in-controversy line. Leaving just $3,000 of financial wiggle room for attorney's fees and injunctive relief, and then essentially conceding that those two items are worth more than

//

---

[4] Incidentally, Stelzer's own estimate of attorney's fees is favorable to CarMax: "This case *should have* settled at the demand letter stage, with a few thousand dollars expended in attorney's fees." (Reply Br. at 3.) The Court is stunned, quite frankly, that Stelzer would seek $72,000 in this case, leaving only $3,000 of jurisdictional wiggle room, and then concede that attorney's fees are worth "a few thousand" while injunctive relief is worth "$3,500 to $7,000."

- 10 -

$3,000, leaves the Court with no choice but to find that the amount-in-controversy requirement for diversity jurisdiction is satisfied in this case.

### IV. Conclusion

For the reasons given above, Stelzer's motion to remand is **DENIED**. The Court will soon consider and rule on CarMax's pending motion to dismiss.

**IT IS SO ORDERED**.

DATED: December 20, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge