# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA STELZER,<br>Plaintiff,<br>vs.<br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, A Limited Liability Company; and Does 1 through 75, inclusive,<br>Defendant. | CASE NO. 13-CV-1788-LAB-JMA<br>**ORDER ON DEFENDANT'S MOTION TO DISMISS** |

This is a consumer rights case. Stelzer bought a Mercedes from CarMax in March 2012 that was advertised and sold as "certified" but, she alleges, didn't come with the kind of completed inspection report that the law requires such a car to have. She also alleges that it leaked oil, had a faulty air conditioner, and was in the shop at least ten times in the first year that she owned it, requiring approximately $20,000 worth of work. She asserts claims for (1) a violation of the Consumers Legal Remedies Act; (2) a violation of California's Unfair Competition Law; and (3) fraud and deceit. Now pending is CarMax's motion to dismiss.

## I. Legal Standard

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court must accept

all factual allegations as true and construe them in the light most favorable to Stelzer. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat CarMax's motion to dismiss, Stelzer's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in Stelzer's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

## II. Factual Background and Claims

Stelzer's Mercedes came with a "CarMax Quality Inspected" certificate in the glove compartment. That certificate said "This is to certify that this vehicle has passed the rigorous CarMax Certified Quality Inspection." It said "We check over 125 points" and then listed them under various categories, such as Engine, Cooling System, Transmission, and so on. (*See* Compl., Exh. 2.)

In Stelzer's eyes, this CQI certificate didn't comply with California's Vehicle Code, which regulates the use of the word "certified." Specifically, Stelzer alleges that the certificate violated California Vehicle Code § 11713.18, which requires a dealer selling a

"certified" car "to provide the buyer with a completed inspection report indicating all the components inspected." First, the certificate wasn't provided to Stelzer prior to purchase, but rather left in the glove compartment of her new car. (Compl. ¶ 11.) Second, the certificate is just a generic list of what CarMax's standard inspection covers, not a "completed inspection report" particular to her car. (Compl. ¶ 12.) In fact, Stelzer alleges that the underlying worksheet or checklist that's behind the certificate is thrown out, in violation of 13 C.C.R. §§ 272.00 and 272.02, which require car dealerships to retain all records relating to vehicle transactions for at least three years. (Compl. ¶ 13.)

These alleged violations of California's Vehicle Code and Administrative Code, Stelzer claims, are cognizable under the Consumers Legal Remedies Act and Unfair Competition Law. There really isn't a difference between the two claims. In her complaint, Stelzer gives the same twelve reasons, word-for-word, as to how CarMax has violated these laws. (Compl. ¶¶ 34, 44.) Her fraud and deceit claim also relies on the same alleged conduct. As to injuries, Stelzer alleges that she was injured in essentially two ways. First, she received something of lesser value than what she paid for. She bought a car she thought was certified that actually wasn't certified, and had she known that she would have either paid less for it or not bought it at all. (Compl. ¶¶ 16–17.) Second, she suffered the opportunity costs of being diverted from finding a truly certified car. (Compl. ¶ 18.) Third, the true condition of her car was concealed, leading her to falsely believe that a certified car from CarMax was equivalent to a certified car from a Mercedes dealer. (Compl. ¶ 19.)

## III. Standing

CarMax's first argument is that Stelzer has no standing to even assert CLRA and UCL claims because she has failed to allege any actual damages as a result of CarMax's conduct. CarMax is right on the law. The California Supreme Court has indeed held that "a plaintiff has no standing to sue under the CLRA without some allegation that he or she has been damaged by an alleged unlawful practice." *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 638 (2009). Likewise, standing under the UCL requires some allegation of

//

actual damages or injury. *Troyk v. Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1347–48 (Cal. Ct. App. 2009); Cal. Bus. and Prof. Code § 17204.

If the Court understands Stelzer's complaint, she claims she paid for a certified car but received an uncertified car, and is therefore out the difference in value between the two. (Compl. ¶ 35; Opp'n Br. at 6.) If that's indeed her claim, then there's little doubt that she has alleged actual damages. *See Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 330 (2011). But the Court has serious doubts as to whether the facts Stelzer alleges actually support the allegation that the Mercedes she bought was *un*certified. Take for example Stelzer's charge that the CQI certificate was left in her glove compartment of her Mercedes rather than provided to her prior to purchase. (Compl. ¶ 11.) That has nothing to do with whether the Mercedes was actually certified, any more than whether someone is a college graduate depends on his or her ability to produce a physical diploma. True, the Vehicle Code requires a dealer to provide the buyer with a completed inspection report prior to sale, but this is really just a technical requirement that has no bearing whatsoever on whether the underlying inspection actually happened.

The Court would say the same with respect to Stelzer's allegation that the CQI certificate isn't a completed inspection report. Even assuming that's true—and the Court has its doubts[1]—this allegation merely goes to how the certification was papered, not whether there was a certification in the first instance. That's not to say there's no violation of the Vehicle Code alleged in this case; it's just to say that it's quite possibly a violation without any discernable injury. It isn't the underlying paperwork that makes a car certified, after all, but CarMax's diligence in conducting a rigorous exam of that car and ensuring that it is

---

[1] The CQI certificate says "This is to certify that this vehicle has passed the rigorous CarMax Certified Quality Inspection," and it then lists approximately 125 points that were checked. The obvious meaning of this is that these points were inspected and passed CarMax's inspection. That is what the words "this vehicle has passed mean"; those are the results Stelzer claims are absent. Stelzer argues that it's not a report but merely a generic list, and that the underlying checklist CarMax uses for individual cars is discarded. She cites no authority, however, that further specifies what a "completed inspection report" is under the Vehicle Code. She simply claims, in conclusory a manner as possible, that a checklist certifying that over 100 points passed a formal inspection isn't the same thing as a completed inspection report.

problem-free and ready to drive. The Court wonders: If CarMax sent a team of its best mechanics to Stelzer's dealer, and they spent several months restoring her Mercedes to flawless running condition, would she claim it's uncertified if, in the end, they didn't document their work and hand that documentation to her? That seems an absurd elevation of procedure over substance, and one that is blind to actual damages. If Stelzer really wants to claim she bought an uncertified car, she should have to allege that CarMax either didn't do the inspection it said it did, or did it in such a perfunctory and careless way that it was meaningless. She shouldn't be allowed to plead technical violations of the vehicle code as the basis of CLRA or UCL claims if those violations have nothing to do with the economic value of the car she bought.

In fairness, Stelzer does claim in her complaint that CarMax misrepresented that the vehicle had been through a 125-point inspection, failed to disclose that it was defective, sold a vehicle that was in need of substantial repair, and misrepresented the results of the inspection. (Compl. ¶ 34.) The problem is that these allegations come in a serial recitation of twelve different grievances in the claim section of her complaint and don't line up at all with her general factual allegations. Indeed, in her complaint Stelzer alleges that CarMax violated the CLRA in twelve ways, but earlier in her complaint and in her opposition brief she limits her allegations to the three mentioned above. (Compl. ¶ 11–13; Opp'n Br. at 7 ("Plaintiff's CLRA cause of action details three distinct violations. First, CarMax violated the CLRA by labeling the Mercedes 'Certified' without providing a completed inspection report <u>prior to sale</u>. Second, CarMax called the Mercedes 'Certified' without providing <u>a completed inspection report</u> prior to sale. Finally, CarMax actively suppressed and concealed the results of its vehicle inspection, which it had a duty to disclose.").)

For the reasons given above, the Court finds that Stelzer has failed to allege any actual damages, and as a result has no standing to assert the claims she does.

## IV. Conclusion

The timeline in this case is telling. Stelzer bought her Mercedes on March 25, 2012, and she filed this lawsuit on June 20, 2013. It couldn't possibly have taken her over a year

to realize that the CQI certificate was left in her glove compartment rather than handed to her, or that the CQI certificate was, as she claims, a generic checklist rather than a completed inspection report. That suggests to the Court what this case is really about: Stelzer bought a car from CarMax that, as she says, was constantly in need of repairs and not of the quality she expected when she bought it. That's an understandable grievance, and there are presumably legal claims to have it heard and addressed. But as the Court sees it, violations of § 11713.18 of the Vehicle Code that are, in turn, violations of the CLRA is not one of them. That subsection just lays out technical requirements for papering or confirming that a car is certified. It is a legal distraction. It has nothing to do with the quality of that certification or the assurance that the certification actually happened. It would seem that what Stelzer really wants to allege is that CarMax's certification process consists of little more than tire-kicking and isn't an assurance of quality, which may well be actionable under the CLRA. (*See* Compl. ¶ 32.) It may also give rise to a fraud claim, if CarMax knowingly exaggerates the rigor of its certification process in order to dupe customers into buying so-called "certified" cars. Those are claims that Stelzer needs to develop. As it reads now, however, her complaint is hung up on technical violations of one section of the Vehicle Code that are tangential to those claims.

The big-picture problem here, then, which prevents the Court from even considering CarMax's motion to dismiss in its entirety, is that the actual claims Stelzer brings don't map onto this core grievance and seem to be inappropriate for it. She doesn't allege how her car is of diminished value simply in virtue of CarMax's CQI certificate being in the glove compartment, or being a generic list of points checked and approved rather than the underlying record of work performed. It may be that Stelzer doesn't believe she received the certified car she paid for, but it takes more than a technical violation of Vehicle Code § 11713.18(a)(6) to allege that. The concern of that subsection has absolutely nothing to do with whether a car is *actually certified*, that is, whether it was thoroughly inspected by CarMax and found to be of a certain quality. CarMax's motion to dismiss is therefore

//

GRANTED, and Stelzer's complaint is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

That amended complaint should cure the substantial defect identified above, and it should also tighten up her CLRA and UCL claims. CarMax, and the Court, have a right to know what the full basis of those claims are. It is confusing, to say the least, to be told that CarMax violated the CLRA in three ways, but also twelve ways, and that the CLRA prohibits seven different things, and CarMax violated other statutory requirements in so many ways, which injured Stelzer in three ways, and so forth. All of those dots need to be connected. If that means pleading multiple CLRA claims so that CarMax and the Court can understand exactly how Stelzer is assembling them, that is what it means.

Stelzer may file a first amended complaint within two weeks of the date this Order is entered.

**IT IS SO ORDERED**.

DATED: December 19, 2013

**HONORABLE LARRY ALAN BURNS**
United States District Judge